# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEMO, | * | |
|    Plaintiff | * | |
| v. | * | Civil Action No. 8:18-cv-00716-PX |
| KIRKSEY, *et al.*, | * | |
|    Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Luke Demo brings suit against Defendants for allegedly placing Global Positioning System ("GPS") tracking devices on Plaintiff's vehicle and in the diaper bag used for Demo and Defendant Katherine Kirksey's child in common. Now pending before the Court are Defendants' Motions to Dismiss (ECF Nos. 5, 25, 27, 29) and Defendants Donna Rismiller and Rismiller Law Group, LLC (collectively, the "Rismiller Defendants")'s Motion for Leave to File a Reply. ECF No. 34. The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants in part and denies in part Defendants' Motions to Dismiss and denies the Rismiller Defendants' Motion for Leave to File a Reply.

**I.    Background**

Demo and Kirksey are involved in protracted state litigation over the custody and visitation of their minor child. ECF No. 20 ¶ 6. Included in the custody battle are three related domestic violence cases. ECF No. 5-4 at 2, 8. Shortly after the litigation began, Kirksey hired Jared Stern and Stern Strategies International, LLC, (collectively, the "Stern Defendants") to surveil Demo. ECF No. 20 ¶¶ 7, 15. The Rismiller Defendants, who represent Kirksey in the custody suit, "recommended" the ongoing surveillance of Demo. *Id.* ¶ 10.

The Stern Defendants placed a GPS tracking device onto Demo's car and provided

monitoring software to Kirksey, which allowed her to track Demo's vehicle. *Id.* ¶ 8. Kirksey monitored the location of Demo's vehicle from approximately January 2017 through July 2017. *Id.* ¶ 12. Kirksey was able to track Demo's vehicle as he traveled between his home in Pennsylvania and Maryland, where he would pick up the child for permitted visitation. *Id.* ¶ 11. Defendants also placed a GPS tracking device in the diaper bag that traveled with the child (who was young enough to need a diaper bag). When the child was with Demo, which occurred at regular intervals consistent with the parents' custody arrangement, Demo's every move, while he had possession of the diaper bag, was shared with Kirksey. *Id.* ¶ 9. The tracking software for both the diaper bag and vehicle allowed monitoring 24 hours a day, seven days a week for six continuous months.

In July 2017, Demo discovered the device in the diaper bag and advised Kirksey to stop surveilling him. *Id.* ¶ 12. On March 9, 2018, Demo filed this action, alleging invasion of a protected privacy interest by intrusion upon seclusion, harassment under the Maryland criminal code, and a violation of the Pennsylvania Wiretap Act. ECF No. 1.

**II.** **Standard of Review**

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded allegations are accepted as true and viewed most favorably to the party pursuing the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id.* "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "[C]onclusory statements or 'a formulaic recitation of the elements of a cause of action will not

2

[suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

When a motion to dismiss is styled in the alternative as a motion for summary judgment, the court may exercise its discretion under Rule 12(d) of the Federal Rules of Civil Procedure to convert the Rule 12(b)(6) motion to one brought pursuant to Rule 56. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). In this case, the Court declines to consider the Rismiller Defendants' motion (ECF No. 5) as one for summary judgment and instead will treat it as a motion to dismiss under Rule 12(b)(6).

**III. Analysis**

**A. Motions to Dismiss**

As a preliminary matter, the Court must determine which of Defendants' four motions to dismiss are properly before the Court. ECF Nos. 5, 25, 27, 29. Plaintiff argues that the Rismiller Defendants' first Motion to Dismiss (ECF No. 5) was mooted by Plaintiff's Amended Complaint. ECF No. 30-1 at 3. Generally, an amended complaint moots a motion to dismiss the original complaint. *Johnson v. Asset Acceptance, LLC*, No. GLR-15-538, 2015 WL 8760737, at *1 (D. Md. Dec. 15, 2015). However, where the amended complaint does not resolve the deficiencies alleged in the motion to dismiss, "the Court may consider the motion as addressing the second amended complaint." *Id.* Here, the Amended Complaint primarily modifies only one paragraph. ECF No. 20-1 ¶ 10. The vast majority of the Rismiller Defendants' arguments are unaffected by the amendments. The Motion to Dismiss (ECF No. 5), therefore, is not moot.

Plaintiff also argues that the Rismiller Defendants' second Motion to Dismiss (ECF No. 29) is untimely, as it was filed two days after the deadline established by Federal Rule of

Civil Procedure 15(a)(3). The Court agrees. A motion to dismiss an amended complaint must be made "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading." Fed. R. Civ. P. 15(a)(3). The court may extend the time to respond "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, the Rismiller Defendants moved to adopt the other Defendants' Motions to Dismiss (ECF Nos. 25, 27) sixteen days after service of the amended pleading. But the Rismiller Defendants did not move to file after the deadline passed and did not give any reason for the untimely filing. The Court cannot extend the deadline. *See Hanlin-Cooney v. Frederick Cty., Md.*, No. WDQ-13-1731, 2014 WL 576373, at *10 n.31 (D. Md. Feb. 11, 2014). That said, the Court notes that the issues presented in the Rismiller Defendants' second Motion to Dismiss have been fully covered by other motions (ECF Nos. 5, 25, 27); accordingly, striking the untimely pleading visits no prejudice on the Rismiller Defendants. ECF No. 29.[1]

The Court now turns to the sufficiency of the claims for intrusion upon seclusion, harassment, and violation of the Pennsylvania Wiretap Act.

### i. Intrusion Upon Seclusion (Count I)

Plaintiff alleges that Defendants unreasonably intruded upon his seclusion by tracking his location through the use of GPS devices. None of the parties have clearly determined which law governs this tort. When a federal court sits in diversity, as it does here, the court "must apply the conflict of laws rules of the forum state—here, Maryland." *Sokolowski v. Flanzer*, 769 F.2d 975, 977 (4th Cir. 1985). Maryland applies the doctrine of *lex loci delicti*, such that when "the events

---

[1] Likewise, the Court denies the Rismiller Defendants' Motion for Leave to File a Reply. ECF No. 34. The reply was due fourteen days after service of Demo's consolidated response to the motions to dismiss. *See* Loc. R. 105.2.a. The Rismiller Defendants filed their response eleven days late and did not provide any reasons for the delay. ECF Nos. 33, 34. Thus, the Court cannot extend the deadline and so strikes the Rismiller Defendants' reply. ECF No. 33.

4

giving rise to a tort action occur in more than one State," the court must apply the law of the state where "the last event required to constitute the tort occurred." *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620 (2007). Because Plaintiff alleges that the surveillance occurred in both Pennsylvania and Maryland, it is unclear at this stage which state's law governs. *See* ECF No. 20 ¶ 11.

However, Maryland and Pennsylvania have adopted the same definition for intrusion upon seclusion. Intrusion upon seclusion is one of the torts under invasion of privacy. *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161 (1986); *Harris ex rel. Harris v. Easton Pub. Co.*, 335 Pa. Super. 141, 152 (1984). An intrusion upon seclusion occurs where there is an "intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 130 Md. App. 67, 73 (2000) (citing Restatement (Second) of Torts § 652B (Am. Law. Inst. 1977)); *see also Harris*, 335 Pa. Super. at 153 (quoting Restatement (Second) of Torts § 652B). Generally, if reasonable surveillance captures only what can be seen by the general public, no intrusion upon seclusion has occurred. *Furman*, 130 Md. App. at 73; *Tagouma v. Investigative Consultant Servs., Inc.*, 2010 Pa. Super. 147, 176–77 (2010). But if the conduct "amounts to a persistent course of hounding, harassment and unreasonable surveillance, even if conducted in a public or semi-public place," it may rise to the level of an intrusion upon seclusion. *Wolfson v. Lewis*, 924 F. Supp. 1413, 1420 (E.D. Pa. 1996).

To find that conduct is an unwarranted invasion of a plaintiff's privacy, both Maryland and Pennsylvania Courts engraft into the common law definition of "privacy" the "reasonable expectation of privacy" standard animating the Fourth Amendment to the Constitution of the United States. *See Furman*, 130 Md. App. at 73 ("[A] trespass becomes relevant only when it

invades a defendant's reasonable expectation of privacy.") (*quoting McMillian v. State*, 85 Md. App. 367, 394 (1991), *vacated on other grounds,* 325 Md. 272 (1992)); *Tagouma*, 2010 Pa. Super at 176; *see also* Restatement (Second) of Torts § 652B cmt. c; *Whye v. Concentra Health Servs., Inc.*, No. ELH-12-3432, 2013 WL 5375167, at *19 (D. Md. Sept. 24, 2013) (cautioning against wholesale application of Fourth Amendment search and seizure jurisprudence to an intrusion upon seclusion claim concerning employer's breath alcohol tests of employees, but recognizing such jurisprudence as "helpful" to define individual privacy interest). That is, courts consider whether the privacy alleged to have been invaded is one protected from similar, governmental intrusion under the Fourth Amendment.

However, neither Maryland or Pennsylvania have reached the precise question here: whether GPS tracking of the kind and duration averred in this case amounts to an invasion of a plaintiff's reasonable expectation of privacy. Other courts have refused to allow the claim to proceed based on a defendant's GPS tracking of a plaintiff's vehicle, reasoning that a plaintiff does not enjoy a reasonable expectation of privacy in travel on public streets. *Moran v. Lewis*, 2018 Ohio 4423 (Oh. Ct. App. 2018) ("The mere act of monitoring another's public movements through the attachment of a GPS tracking device is not, in and of itself, sufficient to state an invasion of privacy claim"); *HSG, LLC v. Edge-Works Mfg. Co.*, No. 15 CVS 309, 2015 WL 5824453, at *8 (N.C. Super. Oct. 5, 2015); *Troeckler v. Zeiser*, No. 14-CV-40-SMY-PMF, 2015 WL 1042187, at *3 (S.D. Ill. Mar. 5, 2015); *Villanova v. Innovative Investigations, Inc.*, 420 N.J. Super. 353, 362 (App. Div. 2011); *Elgin*, 2005 WL 3050633, at *4. *But see McBride v. Shipley*, No. CIV-18-205-R, 2018 WL 4101524, at *1 (W.D. Okla. Aug. 28, 2018) (allowing intrusion upon seclusion claim to proceed, without analysis, noting that "it is plausible that Defendants tracked their movements on private property"). For the following reasons, this Court takes the

road less traveled.

Most significantly, the constitutional landscape has changed with respect to an individual's reasonable expectation of privacy in electronic data that captures the individual's constant movement in public spaces for an extended period of time. Until recently, it was settled that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281 (1983). In *Knotts*, the Supreme Court of the United States held that a defendant maintained no expectation of privacy in the signals emitted from the government-installed beeper housed in a container and transported in a car driven on public roads by the defendant. Indeed, several courts have relied in whole or in part on *Knotts* to reason similarly that a plaintiff enjoys no reasonable expectation of privacy in signals emitted from a GPS device attached to a vehicle traveling on public thoroughfares. *HSG*, 2015 WL 5824453, at *9 (noting that *Jones v. United States*, 565 U.S. 400 (2012), did not overrule *Knotts*); *Villanova*, 420 N.J. Super. at 364; *Elgin*, 2005 WL 3050633, at *3. This is so even though the government surveillance in *Knotts* involved a single, discrete "automotive journey," and expressly left open whether "different constitutional principles may apply be applicable" if "twenty-four hour surveillance of any citizen of this country [were] possible." *Id.* at 283–85.

In 2012, the Supreme Court in *Jones v. United States* revisited the question prophesied in *Knotts* as to the different constitutional principles animating claims on 24 hour surveillance. In *Jones,* the Court determined that installing a GPS device on a criminal defendant's Jeep to track his movements for almost four weeks constituted a search. 565 U.S. at 404. Although the majority opinion reasoned that law enforcement's *trespass* onto Jones' private property[2] to

---

[2] While the vehicle was owned by Jones' wife, the Government did not challenge Jones' standing to object under the Fourth Amendment. *Id.* at 404 n.2.

7

install the GPS constituted an unreasonable search, *id.* at 404–05, a majority of concurring Justices instead recognized that a Fourth Amendment violation could occur because "individuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (citing *Jones*, 565 U.S. at 430 (Alito, J., concurring in judgment) and *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)). Justice Alito, joined by Justices Ginsburg, Breyer, and Kagan, disagreed with Justice Scalia's trespass-based analysis and determined instead that the issue should be decided under the analysis invoked in *Katz v. United States*, 389 U.S. 347, 353 (1967), and its progeny, which collectively rejected that a trespass was necessary for a Fourth Amendment violation. *Jones*, 565 U.S. at 419 (Alito, J., concurring in judgment). The crucial inquiry for the concurring four Justices remained whether the government intrusion invaded an individual's reasonable expectation of privacy regardless of whether such intrusion included physical trespass. Against this constitutional backdrop, the Alito concurrence agreed that warrantless GPS tracking of this nature and duration was a search because it "impinges on expectations of privacy," *id.* at 430, and noted that "the majority is hard pressed to find support in post-*Katz* cases for a trespass-based theory." *Id.* at 424.

Importantly, with respect to *Knotts*, the Alito concurrence distinguished between the brief, constitutionally permissible surveillance accomplished in *Knotts* and the unconstitutional amassing of persistent GPS monitoring at issue in *Jones*:

> [The] relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable. *See Knotts*, 460 U.S., at 281–282, 103 S.Ct. 1081. But the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. For such offenses, society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period. In this case, for four weeks, law enforcement agents tracked every

8

> movement that respondent made in the vehicle he was driving. We need not identify with precision the point at which the tracking of this vehicle became a search, for the line was surely crossed before the 4–week mark. Other cases may present more difficult questions. But where uncertainty exists with respect to whether a certain period of GPS surveillance is long enough to constitute a Fourth Amendment search, the police may always seek a warrant.

*Id.* at 430.

Justice Sotomayor, writing separately, similarly emphasized that "I would take these attributes of GPS monitoring into account when considering the existence of a reasonable societal expectation of privacy in the sum of one's public movements. I would ask whether people reasonably expect that their movements will be recorded and aggregated in a manner that enables the Government to ascertain, more or less at will, their political and religious beliefs, sexual habits and so on." *Id.* at 416. In a rapidly changing technological world, the Justice noted, "it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. . . . I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection." *Id.* at 417–18.

Taken together, a fair reading of the concurring opinions in *Jones* expands the zone of an individual's reasonable expectation of privacy to include continuous and systematic tracking of that individual's every movement through GPS technology in a strikingly similar manner to that which Demo experienced here. Viewing the Complaint allegations as true, this Court finds no meaningful distinction between the violation of Jones' reasonable expectation of privacy and of Demo's in this particular action. If anything, the combined GPS tracking for six continuous months of Demo's vehicle, and the diaper bag when he had custody of his infant child, is arguably greater in duration and scope than that of the vehicle in *Jones*. Thus, following *Jones*,

9

the Court finds that the Complaint has pleaded sufficient facts to infer plausibly that he enjoyed a reasonable expectation of privacy in the sum of his every movement over the course of six months. On this basis alone, the claim survives dismissal.

Since *Jones*, however, the Supreme Court has plainly reaffirmed an individual's reasonable expectation of privacy in the continuous gathering of geolocation data. In *Carpenter v. United States*, the Court was asked to determine whether the Government may obtain stored cell site location data of an individual's cell phone without first obtaining a search warrant. 138 S. Ct. at 2211. There, the Government had gathered, via subpoena to a third-party cell service provider, the geo-location data for the Defendant's cell phone. *Id.* at 2212. This geo-location data provided the actual physical location of the cell site towers to which the Defendant's cell phone would connect whenever the phone made or received a call. *Id.* The information obtained by subpoena, therefore, constituted 127 days of geo-location data for each of the cell sites to which the defendant's phone had made connection. *Id.* More simply put, the information tracked the defendant's continuous movement by way of his cell phone for just over three months.

The Supreme Court held that because an individual maintains a reasonable expectation of privacy "in the whole of his physical movements," the government must first obtain a search warrant for such data. *Id.* at 2219. Admittedly, the Court recognized that cell site data exacts a greater invasion of privacy than GPS by revealing continuously an individual's location in public as well as non-public spaces. *Id.* at 2218. Relevant to this analysis, however, is *Carpenter's* reaffirmation of that which was first announced in the *Jones* concurrences: "what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 2217 (quoting *Katz*, 389 U.S. at 351–52) (internal quotation marks omitted). This is

because

> a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'

*Carpenter*, 138 S. Ct. at 2217 (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)). *Carpenter*, therefore, established that an individual maintains an expectation of privacy in location data, whether via GPS on a vehicle traveling through public roads, *see Jones*, 565 U.S. at 415, or location data from cell site towers connecting to the cell phone in one's pocket. *See Carpenter*, 138 S. Ct. at 2219.[3]

In light of *Jones* and *Carpenter*, and when viewing the Complaint allegations most favorably to Plaintiff, the claim of intrusion upon seclusion survives challenge. Six months of continuous surveillance accomplished through tracking Demo's vehicle and a diaper bag, which had to accompany the parent of a child small enough to *need* a diaper bag, sufficiently establishes that Defendants intentionally intruded upon Demo's privacy. This is especially so when considering that intrusion upon seclusion is a heavily fact-dependent claim, requiring the trier of fact to consider "all the circumstances including 'the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'" *Wolfson*, 924 F. Supp. at 1421 (quoting *Hill v. Nat'l Collegiate Athletic Assoc.*, 26 Cal. Rptr. 2d 834, 850 (1994)). Although discovery may unearth facts which ultimately preclude

---

[3] The *Carpenter* Court also emphasized that *Jones* had reached "more sophisticated surveillance" than that at issue *Knotts*, namely GPS that tracks "'every movement' a person makes"; accordingly, the five concurring Justices in *Jones* had concluded that GPS monitoring "'impinges on expectations of privacy'—regardless of whether those movements were disclosed to the public at large." *Carpenter*, 138 S. Ct. at 2215 (quoting *Jones*, 565 U.S. at 430 (Alito, J., concurring in judgment); *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)).

the claim from reaching trial, at this stage the Court is unwilling to dismiss such a fact-intensive cause of action where a plausible theory of liability is pleaded. Defendants' motions to dismiss Count I is denied.

### ii. Harassment (Count II)

Defendants next argue that Plaintiff fails to state a claim upon which relief can be granted under the Maryland criminal statute prohibiting harassment. Md. Code, Crim. Law § 3-803. To determine whether a criminal statute can give rise to a private cause of action, courts primarily focus on whether the legislature intended to provide the right to bring suit. *Baker v. Montgomery Cty.*, 201 Md. App. 642, 670 (2011). "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Fangman v. Genuine Title, LLC*, 447 Md. 681, 716 (2016) (quoting *Baker v. Montgomery Cty.*, 427 Md. 691, 713 (2012)).

"Plaintiff concedes that, standing alone, and considering the explicit language of the statute and its legislative history from its enactment in 1986, the statute does not provide for a cause of action, and appears solely to be a penal statute." ECF No. 30-1 at 14. In an attempt to save the claim, Plaintiff looks instead to the peace order statute and argues that this statute provides a private right of action to sue for harassment. *Id.* Because grounds for obtaining a peace order in Maryland include "[h]arassment under § 3-803 of the Criminal Law Article," goes the argument, the Maryland legislature contemplated a civil action for harassment. *See* Md. Code, Cts. & Jud. Proc. § 3-1503(a)(vi). The peace order statute works no such expansion.

The peace order statute provides several enumerated and well-defined types of injunctive relief to be imposed by a court in a manner "minimally necessary to protect the petitioner" and for no greater duration than up to six months. Md. Code, Cts. & Jud. Proc. § 3-1505(d), (f). Such relief—injunctive, limited, and enumerated—bears no resemblance to filing a civil

harassment suit seeking $4 million dollars, plus attorneys' fees and costs.  *See* ECF No. 20 ¶ 23.  The Court therefore, cannot understand how the peace order statute's carefully articulated injunctive relief supports the conclusion that Maryland intended to create a private right of action for money damages under the criminal statute prohibiting harassment.

Plaintiff nonetheless contends that such inference is plausible because the peace order statute sets no limitation on the type of relief an aggrieved part may seek: "a petitioner [for a peace order] is not limited to or precluded from pursuing any other legal remedy."  Md. Code, Cts. & Jud. Proc. § 3-1502(a).  Fairly read, this provision makes plain that pursuing a peace order does not preclude also pursuing other established avenues of relief.  Nothing about this provision permits the creation of an entirely new cause of action.  *Cf. Davidson v. Seneca Crossing Section II Homeowner's Ass'n, Inc.*, 187 Md. App. 601, 637 (2009) (holding that peace order statute does not preclude petitioner from pursuing injunctive relief on parallel common law causes of action).  Plaintiff's harassment claim must be dismissed.

### iii. Pennsylvania Wiretap Act (Count III)

Defendants likewise move to dismiss Count III, alleging a violation of the Pennsylvania Wiretap Act specifically applicable to installation of mobile tracking devices, because the statute does not provide for a private cause of action .  18 Pa. Cons. Stat. § 5761.   The Court agrees with Defendants.  The Act prohibits law enforcement installation of a GPS device, unless law enforcement receives a court order supported by a probable cause that "criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity."  *Id.* § 5761(c)(4).  Nowhere does the plain language of the statute expressly allow for an aggrieved party to file a civil suit against another private individual.

Under Pennsylvania law, courts consider the following factors in deciding whether a criminal statute confers a private cause of action:

> (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

*Schappell v. Motorists Mut. Ins. Co.*, 594 Pa. 94, 103 (2007).

With respect to the first factor, Plaintiff plainly appears to be within the class for whose benefit the statute was enacted. Section 5761 prohibits unauthorized GPS installation—precisely what happened here. As an individual whose interests are to be free from unauthorized and unwarranted GPS tracking, Plaintiff prevails on the first factor.

As to the second factor regarding legislative intent, the Court is "guided by the Statutory Construction Act." *Id.* at 101. Under the Statutory Construction Act, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. § 1921. Considering the Wiretap Act as a whole, this factor is fatal to Plaintiff's claim. The Wiretap Act prohibits warrantless GPS tracking as well as unlawful interception of wire, electronic or oral communication, 18 Pa. Const. Stat. §§ 5703–28, or stored wired and electronic communications and record access. *Id.* §§ 5741–49. The wire and electronic or oral communication provisions expressly allow for private causes of action. §§ 5725, 5747. Accordingly, these provisions demonstrate that when the legislature wishes to extend civil liability in the wiretap context, it knows how to do so. Reading these provisions *in pari materia* with § 5761, which does not expressly provide for a private cause of action, precludes the Court from finding that the legislature intended to allow a private cause of action as to GPS devices. Because the Legislature did not so intend, Plaintiff cannot meet the

second factor.

Plaintiff counters that the Pennsylvania legislature allows for a civil claim, relying exclusively upon *Commonwealth v. Burgos*, 64 A.3d 641 (Pa. Super. Ct. 2013) (holding that wiretap order did not violate the Fourth Amendment). *Burgos* concerns only law enforcement's use of tracking devices in the context of a motion to suppress illegally obtained evidence in a criminal case. Indeed, *Burgos* noted that § 5761 was enacted for "the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction." *Id.* at 654 (quoting *Com. v. Cruttenden*, 976 A.2d 1176, 1179 (Pa. Super. Ct. 2009)). *Burgos* does not, in any way, allow a private cause of action. Additionally, the Court was unable to find a single case where a litigant brought a private lawsuit based upon violations of the subchapter on mobile tracking devices. The Court must dismiss Plaintiff's claim under the Pennsylvania Wiretap Act.

### B. Leave to Amend

Plaintiff seeks leave to amend his Amended Complaint to include a claim of civil conspiracy and negligence. ECF No. 30-1 at 15. Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, when allowing amendment would "be prejudicial to the opposing party, when the moving party has acted in bad faith or with a dilatory motive, or when the amendment would be futile." *Arora v. James*, 689 F. App'x 190, 190 (4th Cir. 2017) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)) (internal quotation marks omitted).

Here, Defendants solely contend that amendment is futile because no underlying tort has been committed. ECF No. 32 at 4. Defendants are correct that civil conspiracy requires (1) a confederation of two or more persons by agreement (2) to commit some unlawful or tortious act

15

done in furtherance of the conspiracy, which (3) damages the Plaintiff. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004). Because the tortious act of intrusion upon seclusion survives, however, so does the predicate for civil conspiracy. The amendment is not futile. The Court will grant the request.

**IV. Conclusion**

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 5, 25, 27) are granted in part and denied in part, the Rismiller Defendants' motion for leave to file a reply (ECF No. 34) is denied, and the Rismiller Defendants' second motion to dismiss and reply are stricken. ECF Nos. 29, 33. A separate order follows.

November 15, 2018 _____ \_\_\_/S/_____
Date  Paula Xinis
  United States District Judge